UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**MATTHEW FLEEGER,**

    **Plaintiff,**

**v.**     Case No:  5:12-CV-294-Oc-32PRL

**WACHOVIA BANK**

    **Defendant.**

### REPORT AND RECOMMENDATION[1]

This cause is before the Court on the Defendant's motion to dismiss the second amended complaint (Doc. 6), to which the Plaintiff has responded (Doc. 8).  On August 23, 2012, the District Judge referred this matter to the undersigned for a report and recommendation.  (Doc. 13).  For the reasons discussed below, it is respectfully recommended that Defendant's motion be DENIED as to Counts I, II, III, IV, V, and VII, and GRANTED as to Count VI**.**

### I. BACKGROUND

This action arises out of a loan Plaintiff obtained from the Defendant to finance the purchase of a ten acre lot in Sumter County, Florida (the property[2]), from Jeffrey Phillips of Withlacoochee Property, the developer.[3]  Plaintiff essentially alleges that he was induced to enter into the transaction based, at least in part, upon fraud or material misrepresentations and omissions by the developer and, more importantly for purposes of this action, the Defendant.

---

[1] Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within fourteen (14) days after service of this report and recommendation.  Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.
[2] The property is located at 5931 Country Road 251, Lake Panasoffkee, Florida 33538.
[3] Plaintiff originally initiated this action with two other plaintiffs.  *See Willison, et. al. v. Wachovia Bank*, No. 5:11-cv-394-TJC-TBS (M.D. Fla. 2011).  However, the Court severed Plaintiff and his claims from that action because Plaintiff's claims were sufficiently distinguishable.  (Doc. 1.)

The Plaintiff begins the complaint by introducing the developer, who he says assured him that the property was part of a larger master-planned development platted for eighty single family homes, that the property was waterfront, that it was zoned for residential use, and that Plaintiff could build homes (i.e., apparently more than one home) on it. (Doc. 2, ¶ 7). After the Plaintiff and the developer agreed to a purchase price ($750,000), the developer, according to the Plaintiff, handed him off to the Defendant. The Defendant assured the Plaintiff that it would perform due diligence and coordinate the closing and purchase of the property. (Doc. 2, ¶ 8, 10-11).

At this point, Plaintiff began working with Defendant, including a specific employee named Karlene Wong. According to Plaintiff, Ms. Wong assured Plaintiff that she had visited the property, which was part of a "beautiful development," that she had worked with the developer before, and that, among other things, Plaintiff was getting a "good deal" on the property and should encourage others to purchase in the development. (Doc. 2, ¶ 8-9).

Ultimately, according to the Plaintiff, Ms. Wong told Plaintiff that the property "possessed the characteristics represented by the developer," including that it was zoned residential and that he could build houses on it[4], that it was waterfront property, that it was worth more that the purchase price (which was, again, $750,000), and, again, that Plaintiff was getting a good deal. (Doc. 2, ¶ 12). Based on Defendant's assurances and representations, including its purported agreement to perform due diligence, Plaintiff purchased the property on August 2, 2007. (See, e.g., Doc. 2, ¶ 14). As it turns out, according to Plaintiff, the developer had never received approval to build out the development, the property was not zoned for more than one

---

[4] Ms. Wong even suggested that the Defendant could provide financing to Plaintiff to build homes on the property. (Doc. 2, ¶ 12)

2

home, the property was not on the water, the property was not platted, and (perhaps most critically) the property was worth less than $50,000. (Doc. 2, ¶ 15).

Plaintiff's complaint (Doc. 2) alleges state law clams for negligent misrepresentation (Count I), negligence (Count II), fraudulent misrepresentation (Count III), fraudulent inducement (Count IV), conspiracy to commit fraud (Count V), equitable estoppel (Count VI), and breach of fiduciary duty (Count VII).

Defendant moves to dismiss each Count and argues (with some overlap in its arguments): (1) that with respect to the fraud claims Plaintiff has failed to plead certain facts with sufficient particularity; (2) more specifically, that Plaintiff has failed to plead certain elements of a prima facie case for negligent misrepresentation, conspiracy to commit fraud, breach of fiduciary duty, and equitable estoppel; and (3) that the negligence claim is barred by the economic loss rule.

## II. STANDARDS

### A. General Pleading Requirements

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While detailed factual allegations are generally not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The court must view the allegations of the complaint in the light most favorable to the plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom. *La Grasta v. First Union*

*Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).  In considering the sufficiency of the complaint, the court limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *Id.*

The Eleventh Circuit utilizes a two pronged approach in its application of the holdings in *Ashcroft* and *Twombly*.  First, "eliminate any allegations in the complaint that are merely legal conclusions," and then, "where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'"  *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 129 S.Ct. at 1949).  In applying these principles, the Court can infer "'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer."  *Id.* (quoting *Iqbal*, 129 S.Ct. at 1951-52).

## B.  Rule 9 Pleading Requirements

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  "The particularity rule serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'"  *Durham v. Bus. Mgmt. Assocs.,* 847 F.2d 1505, 1511 (11th Cir. 1988) (quotation omitted).  Rule 9(b), therefore, "'ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of . . . [and] protects defendants from harm to their goodwill and reputation.'"  *Wagner v. First Horizon Pharmaceutical Corp.,* 464 F.3d 1273, 1277 (11th Cir. 2006) (quotation omitted) (alterations in *Wagner*).

4

The requirements of Rule 9(b) may be satisfied by specific allegations as to "'date, time or place.'" *See Tello v. Dean Witter Reynolds, Inc.,* 494 F.3d 956, 972–73 (11th Cir. 2007) (quoting *Durham,* 847 F.2d at 1511). Specifically, a complaint can satisfy Rule 9(b) if it sets forth:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Id.* at 972 (quoting *Ziemba v. Cascade Int'l, Inc.,* 256 F.3d 1194, 1202 (11th Cir. 2001)).

With respect to intent, "Rule 9(b) does not require a plaintiff to allege specific facts related to the defendant's state of mind when the allegedly fraudulent statements were made[;]" instead, "it is sufficient to plead the who, what, when, where, and how of the allegedly false statements and then allege generally that those statements were made with the requisite intent." *Mizzaro v. Home Depot, Inc.,* 544 F.3d 1230, 1237 (11th Cir. 2008).

Importantly, the particularity requirement of Rule 9(b) must be read in conjunction with the notice pleading standard of Rule 8. Particularity is sufficiently plead when the complaint "allege[s] fraud with sufficient particularity to permit 'the person charged with fraud . . . [to] have a reasonable opportunity to answer the complaint and adequate information to frame a response." *Arral Industries, Inc. v. Touch Entertainment, Inc.*, 2000 WL 141269, at *3 (S.D. Fla. Jan. 18, 2000) (citing *Future Tech. Intern., Inc. v. Tae II Media, Ltd.*, 944 F. Supp. 1538, 1571 (S.D. Fla. 1996) (quoting *In Re United States Oil & Gas Litigation*, No. 83-1702-Al-CIV, 1988 WL 28544, at *2 (S.D. Fla. Feb. 8, 1988)). Accordingly, "[w]hile the circumstances of fraud must be alleged with specificity, absolute particularity is not required, especially when some matters are beyond the knowledge of the pleader and can only be developed through discovery."

*Livingston v. H.I. Family Suites, Inc.*, 2005 WL 2077315, at *4 (M.D. Fla. Aug. 29, 2005). The complaint, therefore, need only provide a "reasonable delineation of the underlying acts and transactions allegedly constituting the fraud." *Id.*

### III. DISCUSSION

The Court will first address the Defendant's general arguments as to the particularity required by Rule 9, and, in doing so, will address factual pleadings that also address the elements of those claims. The Court will then discuss the more specific arguments as to the prima facie cases for Plaintiff's negligent misrepresentation, conspiracy to commit fraud, breach of fiduciary duty, and equitable estoppel claims. And, lastly, the Court will address Defendant's arguments as to the negligence claim and the economic loss rule.

#### A. General Particularity Arguments

Plaintiff's claims for negligent misrepresentation (Count I)[5], fraudulent misrepresentation (Count III), fraudulent inducement (Count IV), and conspiracy to commit fraud (Count V) sound in fraud. With respect to these Counts Defendant contends that Plaintiff has not properly identified the person (or persons) making the statements or representations, the time and place of each statement, and the manner in which the statements misled Plaintiff. (Doc. 6, at 6-8.)

A review of the complaint, however, reveals that Plaintiff has pled these facts with sufficient particularity as to person, time, place, and manner. As set forth above, Plaintiff alleges that prior to purchasing the property in the Summer of 2007 (preceding a closing on August 2, 2007), Defendant (specifically, e.g., its employee Ms. Wong) falsely (either fraudulently or

---

[5] In Florida, actions for negligent misrepresentation sound in fraud rather than negligence, so the pleading requirements contained in Fed. R. Civ. P. 9(b) apply to negligent misrepresentation claims. *Postel Industries, Inc. v. Abrams Group Construction, L.L.C.*, 2012 WL 4194660, at *2 (M.D. Fla. Sept. 19, 2012) (citing *Morgan v. W.R. Grace & Co.*, 779 So. 2d 503, 506 (Fla. App. Ct. 2000)); *Nehrer v. Bank of America, N.A.*, No. 6:11-cv-50-Orl-31DAB, 2011 WL 4376776, at *2 (M.D. Fla. Sept. 2, 2011); *Linville v. Ginn Real Estate Co.*, 697 F. Supp. 2d 1302, 1306 (M.D. Fla. 2010).

6

negligently) represented to him that the property was zoned for residential use and that he could build houses on it, that it was waterfront property, and (among other things) that the property was valued higher than the purchase price. Based on his relationship with Defendant, and other representations made by Ms. Wong related to the nature of the property and the Defendant's past dealing with the developer, Plaintiff purchased the property at a price that far exceeded its value (again, according to Plaintiff).

These allegations, taken as a whole, are certainly particular enough to put Defendant on notice that leading up to his purchase of the property during the Summer of 2007 – with a closing in August 2007 – Defendant, through at least one employee (i.e., Ms. Wong) made representations about the nature and value of the property that he relied on in his ultimate decision to purchase the property at a price that far exceeded its value. Defendant's motion is, therefore, due to be denied as to these issues. *See, e.g., Taylor, Bean & Whitaker Mortg. Corp. v. GMAC Mortg. Corp.*, 2008 WL 3200286, at *2 (M.D. Fla. Aug. 6, 2008) (finding that the fraud-based claims were sufficiently pled under Rule 9(b) to provide the defendant a reasonable opportunity to answer the complaint and frame a response where the party "alleged that the material omissions [of fact] occurred during negotiations from March 2002 to May 2002 and . . . identified at least two of the persons involved in the negotiations.").

### B. More Specific Prima Facie Case Arguments

As to Plaintiff's claims for negligent misrepresentation (Count I), conspiracy to commit fraud (Count V), breach of fiduciary duty (VII), and equitable estoppel (Count VI), Defendant more specifically argues that certain elements of each respective Count has not been sufficiently pled. With the exception of Count VI for equitable estoppel, which is due to be dismissed, the Defendant's motion is due to be denied.

1. Negligent Misrepresentation (Count I)

To state a claim for negligent misrepresentation, Plaintiff must allege that:

(1) there was a misrepresentation of material fact; (2) the represener either knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known the representation was false; (3) the represener intended to induce another to action on the misrepresentation; and (4) injury resulted to a party acting in justifiable reliance upon the misrepresentation.

See *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Companies, Inc.*, 607 F.3d 742, 747 (11th Cir. 2010) (quoting *Baggett v. Electricians Local 915 Credit Union*, 620 So.2d 784, 786 (Fla. App. Ct. 1993)).

Here, Defendant challenges the fourth element and asserts that Plaintiff has failed to allege justifiable reliance. This element requires a plaintiff to allege that a misrepresentation was made, the misrepresentation induced the plaintiff to act a certain way, and the inducement was reasonable. *Platinum Estates, Inc. v. TD Bank, N.A.*, 2012 WL 760791, at *2 (S.D. Fla. Mar. 8, 2012) (citing *Goldin v. Salomon Smith Barney, Inc.*, 994 So. 2d 517, 520 (Fla. App. Ct. 2008)). Notably, "[a] plaintiff is not required to describe the action it took [in reliance] with a high degree of specificity." *MeterLogic, Inc. v. Copier Solutions, Inc.*, 126 F. Supp. 2d 1346, 1363-64 (S.D. Fla. 2000) (finding that "[i]t is enough for a plaintiff to allege . . . that the defendant was aware that the plaintiff would rely on defendant's representation and that the plaintiff did in fact rely on them by, for example, entering into a contract with the defendant.").

Plaintiff alleges that he acted in reliance on Defendant's misrepresentations when he purchased the Property. Throughout his complaint Plaintiff alleges that he relied on Defendant's representations because of its size, reputation, and the relationship he had formed with Defendant. Notably, Plaintiff's relationship with – and purported trust in – Defendant stems largely from his communications with Ms. Wong, who, according to Plaintiff, assured him that

Defendant had worked with the developer in the past, that she had visited the property and stated it was part of a beautiful development and, among other things, that she stated it was a good deal and encouraged him to have his family and friends purchase lots in the development also. Plaintiff then asserts that based on Defendant's "representation and agreement to conduct due diligence" he agreed to purchase the Property contingent on Defendant carrying through with its due diligence, and, that he ultimately purchased the Property. (*See* Doc. 2, ¶¶ 9-11, 20, 22.) Perhaps Plaintiff does not use the words "justifiable reliance," but his allegations allege sufficient facts to support – on its face – that element of Count I, at least at this stage in the proceeding. *See Platinum Estates, Inc.*, 2012 WL 760791, at *2 (citing *Cabrera v. Martin*, 973 F.2d 735, 745 (9th Cir. 1992)).

    2. Conspiracy to Commit Fraud (Count V)

With respect to Count V, in addition to arguing that this Count is deficient as to person, time, place, and manner (as discussed above), Defendant also argues that Plaintiff does not sufficiently identify the due diligence that Defendant *refused* to perform, what misrepresentations Plaintiff was relying on, any information regarding the claims of appraisal shopping, and any substance to support his claim that his signature was forged. (Doc. 6, at 7-8.)

To state a claim for conspiracy to commit fraud, Plaintiff must allege that there was (1) an agreement between two or more parties, (2) to do an unlawful act or to do a lawful act by unlawful means, (3) the doing of some overt act in pursuance of the conspiracy, and (4) damage to plaintiff as a result of the acts done under the conspiracy. *Ben-Yishay v. Mastercraft Development, LLC*, 2009 WL 6387928, at *3 (S.D. Fla. Dec. 14, 2009).

In his complaint Plaintiff alleges that the Defendant, in furtherance of its conspiracy with the developer, intentionally misrepresented the nature and value of the property to induce him

(and others) to purchase the property for significantly more than it was worth. More specifically, Plaintiff contends that the Defendant and the developer had an agreement to induce buyers through false representations, that the developer "handed" Plaintiff off to the Defendant, that Ms. Wong (on behalf of the Defendant) then vouched for the developer, and that the Defendant ultimately made the same false representations about the property as the developer did. The false representations, which are set forth above, caused Plaintiff to purchase the property for a price far in excess of its value, to the financial benefit of the developer and Defendant.

Although Plaintiff does not set forth details about the purported appraisal shopping that Defendant engaged in to have the property appear more valuable than it was worth or details about the forged document, the allegations that are set forth are sufficient, at this early stage, to provide the Defendant with "a reasonable opportunity to answer the complaint and adequate information to frame a response," to this claim. *See Arral Industries, Inc.*, 2000 WL 141269, at *3; *Livingston*, 2005 WL 2077315, at *4 (recognizing that the complaint need only provide a "reasonable delineation of the underlying acts and transactions allegedly constituting the fraud."). Indeed, the appraisal shopping and forged signature assertions appear to be allegations about additional overt acts (i.e., acts in addition to the fraudulent statements); thus, the absence of details about these theories does not affect the sufficiency of the allegations that support a prima facie case for this Count.

    3. Breach of Fiduciary Duty (Count VII)

To state a claim for a breach of fiduciary duty Plaintiff must allege: (1) the existence of a fiduciary duty, (2) a breach of that duty, and (3) damage proximately caused by that breach. *Gracy v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002). Fiduciary relationships can be express or implied. *Schwab v. Hites*, 2012 WL 4052277, at *6 (M.D. Fla. Sept. 14, 2012) (citing *Capital*

*Bank v. MVB, Inc.*, 644 So. 2d 515, 518-19 (Fla. App. Ct. 1994)). When a fiduciary relationship has not been created by an express agreement, one may be implied in law based on the "specific facts and circumstances surrounding the relationship of the parties in a transaction in which they are involved." *Schwab*, 2012 WL 4052277, at *6 (quoting *Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp.*, 850 So. 2d 536, 540 (Fla. App. Ct. 2003)).

More specifically, "[t]o establish a fiduciary relationship, a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party." *Bankest Imports, Inc. v. Isca Corp.*, 717 F. Supp. 1537, 1541 (S.D. Fla. 1989) (citing *Barnett Bank of W. Florida v. Hooper*, 498 So. 2d 923 (Fla. 1986)). "The fact that one party places trust or confidence in the other does not create a confidential relationship in the absence of some recognition, acceptance, or undertaking of the duties of a fiduciary on the part of the other party." *Barnett Bank of W. Florida*, 498 at 927-28.

Notably, Florida courts have found that fiduciary relationships between lenders and customers exist where "the bank knows or has reason to know that the customer is placing his trust and confidence in the bank and is relying on the bank so to counsel and inform him." *Capital Bank*, 644 So. 2d at 519 (quoting *Klein v. First Edina Nat'l Bank*, 293 Minn. 418, 196 N.W. 2d 619 (1972)). Moreover, "'special circumstances' may impose a fiduciary duty on a bank, including where the lender (1) takes on extra services for a customer, (2) receives any greater economic benefit than from a typical transaction, or (3) exercises extensive control." *Id.* (citing *Tokarz v. Frontier Fed. Sav. & Loan Ass'n*, 33 Wash. App. 456, 656 P. 2d 1089, 1094 (1982)).

Here, Defendant's only challenge is that Plaintiff failed to allege substantial evidence that he was "dependent" on Defendant to conduct due diligence and, therefore, argues that no

11

fiduciary relationship existed. (Doc. 6, at 12.) To the contrary, Plaintiff has adequately alleged special circumstances demonstrating at least a plausible theory for a fiduciary relationship. Plaintiff alleges that Defendant offered to assume the due diligence duties, that Defendant "agreed to conduct due diligence necessary to verify that the Property had the represented characteristics and a value sufficient to justify the purchase price[,]" that he "placed his trust and confidence in Defendant" because Defendant represented that it had performed many similar transactions, and that Ms. Wong assured Plaintiff the development was an excellent investment. (Doc. 2, ¶ 43.)

Plaintiff trusted and relied on the Defendant based on its assurances to him (through Ms. Wong, at a minimum), as well as Ms. Wong's representations regarding the developer, the development, and the nature of the deal she said he was getting. As pled, given the Defendant's assurances, a fiduciary relationship is plausible and, therefore, the motion is due to be denied.

4. Equitable Estoppel (Count VI)

"Equitable estoppel is based on principles of fair play and essential justice and arises when one party lulls another party into a disadvantageous legal position." *Major League Baseball v. Morsani*, 790 So. 2d 1071, 1076 (Fla. 2001). "Equitable estoppel presupposes a legal shortcoming in a party's case that is directly attributable to the opposing party's misconduct," and it "bars the wrongdoer from asserting that shortcoming and profiting from his or her own misconduct." *Id.* at 1077. "By definition . . . equitable estoppel 'estops' or bars a party from asserting something (e.g., a fact, a rule of law, or a defense) that he or she otherwise would be entitled to assert." *Meyer v. Meyer*, 25 So. 3d 39, 42 (Fla. App. Ct. 2009) (quoting *Major League Baseball*, 790 So. 2d at 1077).

Most importantly, though, in Florida "equitable estoppel is a defensive doctrine rather than a cause of action." *Meyer*, 25 So. 3d at 43 (quoting *Agency for Health Care Admin. v. MIED, Inc.*, 869 So. 2d 13, 20 (Fla. App. Ct. 2004) (emphasis added)); *see Major League Baseball*, 790 So. 2d at 1076 (finding that equitable estoppel is a defensive doctrine); *see also Flagship Resort Development Corp. v. Interval International, Inc.*, 28 So. 3d 915 (Fla. App. Ct. 2010) (finding that "equitable estoppel is not a cause of action, but an affirmative defense"). Indeed, as Florida's First District Court of Appeals recently noted, "[e]quitable estoppel is not designed to aid a litigant in gaining something, but only in preventing a loss." *Agency for Health Care Admin.*, 869 So. 2d at 20 (quoting *Kerivan v. Fogal*, 22 So. 2d 584, 568 (Fla. 1945)).

Here, Plaintiff is attempting to plead equitable estoppel as a claim for affirmative relief in a stand-alone Count (i.e., Count VI).[6] Under Florida law, such a claim cannot be asserted. *See Id.* Accordingly, Defendant's motion to dismiss Count VI is due to be granted.

### C. Negligence (Count II) and the Economic Loss Rule

To state a claim for negligence, Plaintiff must allege: "(1) a legal duty on the defendant to protect the plaintiff from particular injuries, (2) the defendant's breach of that duty, (3) the plaintiff's injury being actually and proximately caused by the breach, and (4) the plaintiff suffering actual harm from the injury." *Zivojinovich v. Barner*, 525 F.3d 1059, 1067 (11th Cir. 2008) (citing *Clay Elec. Coop., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003)). Here, Plaintiff alleges that Defendant "owed a duty to perform due diligence" on behalf of Plaintiff as part of the closing and obtaining the mortgage, and that Defendant "failed to perform that duty" by failing to discover that "the Property is not platted and the Developer failed to obtain site development approval[,] only one home can be built on the Property because of zoning

---

[6] Notably, Plaintiff fails to assert what Defendant should be estopped from doing or what relief he seeks to obtain with this claim.

restrictions[,] the Property is not waterfront[,] and the Property is valued at a fraction of the purchase price." (Doc. 2, ¶ 25.) Plaintiff further alleges that Defendant's actions caused the injury to Plaintiff because Plaintiff purchased the Property far in excess of its worth; and, as a result, Plaintiff was injured. (Doc. 2, ¶ 25.)

As a technical matter, these allegations, on their face, appear sufficient to state a claim for negligence, and certainly there are negligence claims that can be asserted despite the economic loss rule, e.g., professional negligence (*Moransais v. Heathman*, 744 So. 2d 973 (Fla. 1999)) and negligent misrepresentation (*Recreational Design & Constr., Inc. v. Wiss, Janney, Elstner Associates, Inc.*, 820 F. Supp. 2d 1293 (S.D. Fla. 2011)). Notably, though, it is unclear to the Court how Count II for just negligence, is different from – or, rather not simply subsumed by – Plaintiff's other claims that sound in negligence. In any event, Defendant's argument is as to the economic loss rule, which is how the Court will approach this claim now.

The economic loss rule is a judicially created doctrine that precludes certain tort actions where the only damages suffered by the plaintiff are economic losses." *Indemnity Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So. 2d 532, 536 (Fla. 2004). The economic loss rule bars negligence actions seeking economic damages "in circumstances where the parties are either in contractual privity [and one party seeks to recover damages in tort for matters arising from the contract] or the defendant is a manufacturer or distributor of a product." *Id.* at 534. Cases that do not fall into either category "should be decided on traditional negligence principles of duty, breach, and proximate cause." *Id.* at 543.

The rule is designed to prevent the parties from "circumventing the allocation of losses set forth in the contract" by making a claim for economic loss in tort. *Id.* at 536. Accordingly, "a tort action is barred when a defendant has not committed a breach of a duty apart from a

breach of contract." *Id.* at 537 (citing *Electronic Sec. Sys. Corp. v. Southern Bell Tel. & Tel. Co.*, 482 So. 2d 518, 519 (Fla. App. Ct. 1986)). However, "[w]here a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from the acts that breach the contract." *HTP, Ltd. V. Lineas Aereas Costarricences, S.A.*, 685 So. 2d 1238, 1239 (Fla. 1996).

Plaintiff argues that the economic loss rule is inapplicable and that the negligence claim "arises out of conduct by Defendant prior to and independent of the mortgage entered into by [Plaintiff]." (Doc. 8, at 6.) Notably, courts have carved out numerous exceptions to the economic loss rule, including professional negligence, fraudulent inducement, and others. *See Moransais v. Heathman*, 744 So. 2d 973, 983 (Fla. 1999) (finding that a claim for professional negligence is not barred by the economic loss rule); *HTP, Ltd.*, 685 at 1239 (finding that fraudulent inducement is an independent tort and not barred by the economic loss rule).

Defendant's argument may be meritorious (*see, e.g.*, *Federal Deposit Ins. Corp. v. Law Office of Rafael Ubieta, P.A.*, 2012 WL 5307152 (S.D. Fla. Oct. 29, 2012); *Granat v. Axa Equitable Life Ins. Co.*, 2006 WL 3826785 (S.D. Fla. Dec. 27, 2006); *Hotels of Key Largo, Inc.*, 694 So. 2d 74 (Fla. App. Ct. 1997)), but the Court here is without the benefit of the contract to know whether, at this stage in the proceedings, the economic loss rule is a bar to this particular negligence claim. The parties' contract and duties underlying the contract are not currently before the Court[7], so the Court cannot make a determination as to the applicability of the economic loss rule, nor whether the claim here stems from the contract based purely on the arguments in their briefs. *See, e.g., Potter v. AIG Annuity Ins. Co.*, No. 3:06-cv-758-J-16HTS, 2007 WL 295517 (M.D. Fla. Jan. 30, 2007) (finding that where the Court was uncertain as to

---

[7] Although Defendant repeatedly refers to what Plaintiff could have or should have done under the contract, the contract is not before the Court.

whether the plaintiff's negligence claim fell under one of the exceptions to the economic loss rule, the plaintiff was permitted to proceed with the negligence claim where the defendant had "not shown beyond all doubt that [the] [p]laintiff [could] prove no set of facts in support of her negligence claim that would entitle her to relief."). Accordingly, at this early stage in the case, Defendant's motion is due to be denied.

### III. Recommendation

Based on the foregoing, it is respectfully **RECOMMENDED** that Defendant's Motion (Doc. 6) be **GRANTED** as to Count VI and **DENIED** as to Counts I, II, III, IV, V, and VII.

**IN CHAMBERS** in Ocala, Florida on November 20, 2012.

_____
PHILIP R. LAMMENS
United States Magistrate Judge

Copies to:

The Honorable Timothy J. Corrigan
All Counsel